IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05–cv–01890–EWN–BNB

JAMES H. LAYMAN,

     Plaintiff,

v.

CARLOS GUTIERREZ, Secretary,
United States Department of Commerce,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is an employment discrimination case. On February 23, 2007, a jury returned an advisory verdict finding Defendant United States Department of Commerce, National Oceanic and Atmospheric Association, Mountain Administrative Support Center, Human Resources Division discriminated against Plaintiff James H. Layman on the basis of his disability. This matter comes before the court on "Plaintiff's Brief in Support of Request for Equitable Relief," filed April 6, 2007. Jurisdiction is premised upon the existence of a federal question, 28 U.S.C.S. §§ 1331, 1367 (LexisNexis 2007).

**FACTS**

***1.    Factual Background***

Many of the relevant facts of this case are set forth in this court's December 6, 2006

order. (Order and Mem. of Decision [hereinafter "Order"] [filed Dec. 6, 2006].)  Familiarity

therewith is assumed.  Additionally, Defendant proffers and Plaintiff admits the following factual

averments.  In 1998, Plaintiff became eligible to retire.  (Defs.' Resp. to Pl.'s Br. in Supp. of

Request for Equitable Relief, Statement of Relevant Facts [hereinafter "SOF"] ¶ 1 [filed Apr. 30,

2007] [hereinafter "Def's. Resp."]; *admitted at* Pl.'s Reply in Supp. of Request for Equitable

Relief at 2 n.1 [filed May 18, 2007] [hereinafter "Pl.'s Reply"] .)  As of fall of 2001, Plaintiff was

a human resources advisor for Defendant.  (Order at 2.)  In fall of 2001, Plaintiff applied for a

promotion to team leader.  (Stipulations of Fact Nos. 7–8 [filed Feb. 29, 2007].)  Defendant

selected Linda Wamboldt, another human resources advisor, to fill the team leader position

effective January 27, 2002.  (*Id.* No. 19.)  Defendant selected Anita Rakestraw, also a human

resources advisor, to fill a second team leader position effective February 10, 2002.  (*Id.* No. 20.)

Plaintiff believed that Defendant's failure to select him as a team leader was due to discrimination

based on his sex, race, age, disability, or some combination of these protected characteristics.

(Final Pretrial Order at 2 [filed Jan. 22, 2007].)

At trial, Plaintiff testified that at the time he applied for the promotion, his plans "were to

continue working possibly several more years," and that he "enjoyed working" and was thinking

about the need to continue working in order to put his son through college.  (Def.'s Resp., SOF ¶

2; *admitted at* Pl.'s Reply at 2 n.1.)  In late 2003, Plaintiff had "thoughts about possibly retiring"

relating to his children, but decided to continue working.  (*Id.*, SOF ¶ 4; *admitted at* Pl.'s Reply at

2 n.1.)  On October 13, 2004, Plaintiff told his supervisor that he planned to retire on December

3, 2004.  (*Id.*, SOF ¶¶ 5–6; *admitted at* Pl.'s Reply at 2 n.1.)  When asked at his deposition why

he had decided to retire, Plaintiff explained:

> I'd already worked a very long time.  I mean, I was — what — [sixty-one] at the
> time.  I had [thirty-six] years, [seven] months of service.  I had been eligible for
> almost seven years.  I was frustrated about this [] case [I had been working on].  I
> just concluded that maybe it was time for me to retire.

(*Id.*, SOF ¶ 5; *admitted at* Pl.'s Reply at 2 n.1., *see id.*, Ex. B at 5 [Pl. Dep.].)  In an affidavit in

support of his administrative charges against Defendant, Plaintiff stated that treatment by his

supervisor that he considered to be retaliatory played a "huge part" in his decision to retire.[1]

(Supplement/Am. to Pl.'s Resp. to Mot. to Dismiss, Ex. 7 [Pl. Aff.] [filed June 20, 2006].)

Plaintiff explained, "When I attained retirement eligibility, I thought I would work beyond age

[sixty-two] if things were going well at work and in my personal life, but [my supervisor's

retaliatory] actions were affecting me."  (*Id.*)

On October 14, 2004, two days after he had announced his plan to retire, Plaintiff received

performance comments from his supervisor that were arguably negative, and he decided to move

his retirement date up about a month to October 30, 2004.  (Def.'s Resp., SOF ¶ 6; *admitted at*

Pl.'s Reply at 2 n.1.)  Before Plaintiff retired, he heard about a work opportunity with the

---

[1]On December 6, 2006, this court granted summary judgment against Plaintiff on his
retaliation claim.  (Order.)

National Park Service and, in 2004, began doing contract work for the Service.  (*Id.*, SOF ¶ 7; *admitted at* Pl.'s Reply at 2 n.1.)

**2.      *Procedural History***

On September 29, 2005, Plaintiff filed a complaint in this court asserting that Defendant discriminated against him on the basis of his sex, race, age, and/or disability, as well as retaliated against him for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, *et seq.* (LexisNexis 2007) ("Title VII"), the Rehabilitation Act of 1973, as amended, 29 U.S.C.S. § 706, *et seq.* (LexisNexis 2007) ("Rehabilitation Act"), the Age Discrimination in Employment Act, 29 U.S.C.S. § 623, *et seq.* (LexisNexis 2007), and the Equal Access to Justice Act, 28 U.S.C.S. § 2412, *et seq.* (LexisNexis 2007).  (Compl. and Jury Demand ¶¶ 30–44 [filed Sept. 29, 2005].)  On December 6, 2006, this court granted Defendant's motion for partial summary judgment on Plaintiff's retaliation claim, finding Plaintiff failed to: (1) raise a genuine issue of material fact as to whether the performance comments were motivated by retaliation; and (2) present "sufficient facts to permit a reasonable juror to find Defendant's asserted reason for its adverse action was pretextual."  (Order.)

On February 20, 2007, an advisory jury was empaneled to determine whether Defendant discriminated against Plaintiff on the basis of sex, race, disability, and/or age.  (2/20/07 Trial Mins. [filed Feb. 20, 2007]; Pl.'s Trial Br. [filed Feb. 16, 2007].)  After a four-day trial, the jury concluded that Defendant discriminated against Plaintiff on the basis of his disability when it did not promote him to team leader in 2002, but did not discriminate against him on the basis of his sex, race, or age.  (Verdict [filed Feb. 23, 2007].)  On March 5, 2006, the parties filed a joint

status report.  (Jt. Status Report [filed Mar. 5, 2007] [hereinafter "Jt. Status Report"].)  The

parties agreed that reinstatement was not appropriate in the instant case and that back pay was

due.  (*Id.*)  The parties disagreed as to the period of time for which back pay was owed and the

propriety of front pay.  (*Id.*)  On April 6, 2007, Plaintiff filed a request for post-trial equitable

relief in the form of: (1) back pay from January 27, 2002 until the date judgment enters; (2) front

pay from the date judgment enters until March 29, 2009; and (3) imposition of a requirement that

Defendant post a notice regarding anti-discrimination laws.  (Pl.'s Br. in Supp. of Request for

Equitable Relief [filed Apr. 6, 2007] [hereinafter "Pl.'s Br."].)  On April 30, 2007, Defendant

responded to the request.  (Def.'s Resp.)  On May 18, 2007, Plaintiff replied in support of his

request.  (Pl.'s Reply.)  This matter is fully briefed and ripe for review.

## ANALYSIS

### 1.    *Legal Standard*

The remedies available under the Rehabilitation Act include those available under Title

VII.  29 U.S.C.S. § 794a(a)(1) (LexisNexis 2007).  When a party is found to have violated the

Rehabilitation Act, the court has wide discretion to "order such affirmative action as may be

appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with

or without back pay . . ., or any other equitable relief as the court deems appropriate."  42

U.S.C.S. § 2000e–5(g)(1) (LexisNexis 2007); *see also McKinney v. Gannett Co., Inc.*, 817 F.2d

659, 670 (10th Cir. 1987) (noting that the "application of equitable doctrines rests in the sound

discretion of the district court").

### 2.    *Evaluation of Claims*

#### a.    *Back Pay and Front Pay*

Plaintiff contends that had Defendant not discriminated against him, he would have

continued working until he reached sixty-six, the age of full retirement.  (Pl.'s Br. at 2.)

Therefore, Plaintiff reasons, appropriate equitable relief includes both back pay and front pay until

Plaintiff reaches age sixty-six.  (*Id.*)  Defendant counters that regardless of whether Plaintiff

would have continued working until age sixty-six absent discrimination, his voluntary early

retirement prevents this court from awarding back pay past the date of that Plaintiff's retirement

on October 30, 2004.  (Def.'s Resp. at 4–7.)

Under crystal-clear Tenth Circuit precedent, "the remedies of back pay and reinstatement

are not available to [a victim of employment discrimination] unless [he] was constructively

discharged."[2]  *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986); *accord Mallinson-*

*Montague v. Pocrnick*, 224 F.2d 1224, 1236 (10th Cir. 2000).  In other words, absent a showing

of constructive discharge, Plaintiff "is entitled to only the difference in pay between what [he]

earned [as a human resource specialist] and what [he] would have earned as a [team leader] until

[he] resigned."  *Derr*, 796 F.2d at 342–43.  In so holding, the Tenth Circuit noted that "the

constructive discharge doctrine has been applied to Title VII cases by every circuit court of

appeals but one."  *Id.* at 343.  The court reasoned that "'society and the policies underlying Title

VII will be best served if, wherever possible, unlawful discrimination is attacked within the

---

[2]Constructive discharge requires proof that a "reasonable person would view the working
conditions as intolerable."  *Derr*, 796 F.2d at 344 (quotations omitted).

context of existing employment relationships.'" *Id.* (quoting *Borque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 66 [5th Cir. 1980]).  Further, in 2000, the Tenth Circuit explicitly found the constructive discharge doctrine had not been superseded by the 1991 amendments to Title VII. *Mallinson-Montague*, 224 F.2d at 1236.

In the instant case, Plaintiff does not argue he was constructively discharged.  (*See* Pl.'s Br. at 8.)  Instead, Plaintiff urges that "rather than limiting the courts' equitable powers to award relief, the [constructive discharge] rule is actually a tool courts have used to evaluate the real issue in such cases — whether a plaintiff has sufficiently mitigated his damages to warrant equitable relief."  (Pl.'s Reply at 4.)  Plaintiff reads nuance into what is clearly and unapologetically a mandate that "back pay and reinstatement are *not available*" to victims of employment discrimination absent a showing of constructive discharge.  *Derr*, 796 F.2d at 342. Even if Plaintiff were correct, however, I would find that without showing constructive discharge, Plaintiff could not have sufficiently mitigated his damages to warrant equitable relief, because — absent constructive discharge — the only way to sufficiently mitigate his damages would have been to *stay at his job*.  Such is the exceedingly sound premise behind the constructive discharge rule.  *See id.* at 342–43.

Plaintiff emphasizes the Supreme Court's holding that when a plaintiff establishes his right to pursue a private cause of action under a federal statute, the courts must presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.  (Pl.'s Reply at 2.) Thus, Plaintiff argues the remedy of back pay and front pay *must* be available regardless of the judicially-created constructive discharge rule.  (*See id.*)  However, the primary case Plaintiff cites

in support of this proposition, *Davis v. Passman*, 422 U.S. 228 (1979), holds only that a court of appeals *misinterpreted* a statute to prohibit a certain type of recovery.  *See Davis*, 422 U.S. at 246–47.  The case *does not* hold that a court of appeals is prohibited from creating a doctrine to guide lower courts in appropriately administering equitable relief available under a statute.  *See id.*

Even if, as Plaintiff contends, it is completely within this court's discretion to provide for the back pay requested, this court would exercise its discretion to deny back pay due to the absence of evidence that Plaintiff was constructively discharged.  Based on the foregoing, I find Plaintiff is entitled only to the difference in pay between what he earned as a human resources specialist and what he would have earned as a team leader from January 27, 2002, the date Ms. Wamboldt was selected for a team leader position, until October 30, 2004, the date Plaintiff resigned.[3]  *See Derr*, 796 F.2d  at 342–43.

The parties agree that once this court determines the length of the back pay award, which it has, the back pay due Plaintiff can be determined through the National Finance Center, which routinely calculates back pay for federal employees.  (Jt. Status Report at 1.)

---

[3]Plaintiff also relies upon the regulations directed toward the Equal Employment Opportunity Commission ("EEOC") and administrative agencies, as well as the Back Pay Act, to dissuade this court from applying the constructive discharge doctrine.  (*See* Pl.'s Br. at 3, 5–8 [citing 29 C.F.R. § 1614.501(a); 5 C.F.R. § 550.805; 5 U.S.C. § 5596].)  I find any regulations directed towards the EEOC, as opposed to a court of law, cannot serve to supercede established Tenth Circuit precedent, and Plaintiff himself admits in his reply that he cannot rely on the Back Pay Act as substantive support for his claim.  (*See* Pl.'s Reply at 6 n.2.)

**b.**   *Anti-Discrimination Notice*

Plaintiff also seeks to have Defendant post a notice advising its employees of their right to

be free from illegal discrimination in the workplace.   (Pl.'s Br. at 12–13.)  Plaintiff relies on 29

C.F.R. § 1614.501, which directs that when an agency or the EEOC:

> finds that an applicant or an employee has been discriminated against, the agency
> shall provide full relief, which shall include the following elements in appropriate
> circumstances:
>
>> (1) Notification of all employees of the agency in the affected
>> facility of their right to be free of unlawful discrimination and
>> assurance that the particular types of discrimination found will not
>> recur;
>>
>> (2) Commitment that corrective, curative or preventative action will
>> be taken, or measures adopted, to ensure that violations of the law
>> similar to those found will not recur;
>>
>> . . . .
>>
>> (5) Commitment that the agency shall cease from engaging in the
>> specific unlawful employment practice found in the case.

29 C.F.R. § 1514.501(a)(1), (2), (5) (2007).  Although this regulation binds administrative

agencies, not this court, Defendant does not contest that it is within my discretion to order such

equitable relief.  (*See* Def.'s Resp. at 12–15.)  Nevertheless, I find that under the facts of this case,

posting  an anti-discrimination notice is unwarranted.  "[T]he purpose of injunctive relief is to

prevent future violations and the moving party must demonstrate that there exists some

cognizable danger of recurrent violations, something more than a mere possibility, which serves to

keep the case alive."  *EEOC v. Gen. Lines, Inc.*, 865 F.2d 1555, 1565 (10th Cir. 1989).  Plaintiff

has never alleged that the discrimination against him was anything other than an isolated

occurrence, and there is no evidence before the court of similar discrimination against other

employees. (*See* Pl.'s Br.; Pl.'s Reply.) Further, most of the relevant decisionmakers are now

retired. (*See* 2/20/07 Tr. [Pl.'s Test.].) Finally, Plaintiff does not allege that Defendant failed to

make either him or other employees aware of their right to be free from illegal discrimination.[4]

(*See* Pl.'s Br.; Pl.'s Reply.) Put simply, a finding that Defendant discriminated against one

individual on the basis of disability is not, standing alone, sufficient to warrant mandating the

entire Department of Commerce post an anti-discrimination notice. *See Gen. Lines, Inc.*, 865

F.2d at 1565 (denying equitable relief, because "[t]here [was] no reason to believe that the single

unlawful employment practice violation [by the employer] will likely occur again").

2.      **Conclusions**

Based on the foregoing it is therefore ORDERED that PLAINTIFF's request for

additional equitable relief (#101) is DENIED.

---

[4]In fact, pursuant to the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 and the rules promulgated thereunder, federal agencies, such as Defendant, must: (1) give their employees written notification of the anti-discrimination laws; (2) provide their employees with training regarding their rights and remedies under these laws; and (3) require that managers have adequate management training in these areas. *See* Pub. L. No. 107-174, §§ 202–06, 116 Stat. 566, 569–73 (2002); 5 C.F.R. § 724.301 *et seq.*, 724.203 (2007). Defendant has apparently taken strides to comply with this act. *See* New 2007 Dep't of Commerce No Fear Report, http://www.osec.doc.gov/ocr/nofear/nofear.htm (last visited Nov. 2, 2007).

Dated this 15th day of November, 2007.

BY THE COURT:


<u>s/ Edward W. Nottingham</u>
EDWARD W. NOTTINGHAM
Chief United States District Judge