IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05–cv–01890–EWN–BNB


JAMES H. LAYMAN,

     *Plaintiff,*

v.

CARLOS GUTIERREZ, Secretary,
United States Department of Commerce,

     *Defendant.*

---

**ORDER AND MEMORANDUM OF DECISION**

---

     This is an employment discrimination case. On February 23, 2007, a jury returned a
verdict finding Defendant United States Department of Commerce, National Oceanic and
Atmospheric Association, Mountain Administrative Support Center, Human Resources Division
discriminated against Plaintiff James H. Layman on the basis of his disability. This matter comes
before the court on "Plaintiff's Objections to Proposed Findings on Age Claim," filed March 17,
2007. Jurisdiction is premised upon the existence of a federal question, 28 U.S.C. §§ 1331 and
1367.

# BACKGROUND

On September 29, 2005, Plaintiff filed a complaint in this court asserting Defendant discriminated against him on the basis of his sex, race, age, and/or disability, and retaliated against him for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, *et seq.* (LexisNexis 2007) ("Title VII"), the Rehabilitation Act of 1973, as amended, 29 U.S.C.S. § 706, *et seq.* (LexisNexis 2007), the Age Discrimination in Employment Act, 29 U.S.C.S. § 623, *et seq.* (LexisNexis 2007) ("ADEA"), and the Equal Access to Justice Act, 28 U.S.C.S. § 2412, *et seq.* (LexisNexis 2007). (Compl. and Jury Demand ¶¶ 30–44 [filed Sept. 29, 2005].) On December 6, 2006, this court granted Defendant's motion for partial summary judgment on Plaintiff's retaliation claim. (Order and Mem. of Decision [filed Dec. 6, 2006] [hereinafter "Order"].)

In February 2007, the court granted the parties' request to impanel an advisory jury to determine whether Defendant discriminated against Plaintiff based on age.[1] (*See* Def.'s Trial Br. at 4 [filed Feb. 9, 2007]; Pl.'s Trial Br. at 4 [filed Feb. 16, 2007]; 2/20/07 Trial Mins. [filed Feb. 20, 2007].) After a four-day trial, the jury concluded that Defendant discriminated against Plaintiff on the basis of his disability when it did not promote him to team leader in 2002, but did not discriminate against him on the basis of his sex, race, or age. (Verdict [filed Feb. 23, 2007]

---

[1]The court notes that in its November 11, 2007, Order, it mistakenly relayed that an advisory jury was impaneled to determine whether Defendant discriminated against Plaintiff on the basis of sex, race, disability, and/or age. (Order and Mem. of Decision at 1, 4 [filed Nov. 11, 2007].) In fact, the jury's verdict was advisory only with respect to Plaintiff's age claim.

[hereinafter "Verdict"].)  The jury awarded damages on the disability claim in the amount of $39,500.

On March 12, 2007, Defendant filed a proposed order including findings of fact and conclusions of law regarding Plaintiff's ADEA claim.  (Notice of Filing of Proposed Mem. and Order Regarding Pl.'s Age Claim, Attach. 1 [Proposed Order] [filed Mar. 12, 2007] [hereinafter "Notice"].)  On March 17, 2007, Plaintiff filed an objection to the proposed findings, arguing the evidence warrants a finding of age discrimination notwithstanding the jury's verdict.  (Pl.'s Objs. to Proposed Findings on Age Claim [filed Mar. 17, 2007] [hereinafter "Pl.'s Obj."].)  On March 30, 2007, Defendant responded to the objection.  (Def.'s Reply to Pl.'s Objs. to Proposed Findings on Age Claim [filed Mar. 30, 2007].)  This issue is fully briefed.

## ANALYSIS

A federal employee has no right to a jury trial when he brings an ADEA suit against the government.  *See Lehman v. Nakshian*, 453 U.S. 156, 164 (1981) (finding employment discrimination actions do not carry with them a jury trial right); *see Guillory-Wuerz v. Brady*, 785 F. Supp. 899, 890–91 (D. Colo. 1992) (finding 1991 amendments did not overrule *Lehman* as it relates to federal employees bringing suit under the ADEA).  Rule 39(c) of the Federal Rules of Civil Procedure, however, authorizes a district court, in its discretion, to impanel an advisory jury in any case "not triable of right by a jury."  Fed. R. Civ. P. 39(c) (2007).  This does not mean that the trial court may cede its duty to conduct factfinding to the advisory jury:

> [T]he findings of such a jury are, of course, *merely advisory*; the trial court must . . . make its own findings and review on appeal is of the findings of the court as if there had been no verdict from the advisory jury.  While the district court may

exercise its discretion to accept or reject the advisory jury's verdict, the advisory jury's decision is not binding on the district court and the district court has the ultimate responsibility for deciding the case's legal and factual issues.

*OCI, Wyo. v. PacifiCorp*, 479 F.3d 1199, 1205–06 (10th Cir. 2007) (internal citations and quotation marks omitted; emphasis in original); *accord Marvel v. United States*, 719 F.2d 1507, 1515 n.2 (10th Cir. 1983).

In deciding an issue tried to an advisory jury, Federal Rule of Civil Procedure 52(a) requires that "the court shall find the facts specially and state separately its conclusions of law thereon." Fed. R. Civ. P. 52(a) (2007). The district court's findings "'should be sufficient to indicate the factual basis for the court's general conclusion as to ultimate fact[,] . . . should indicate the legal standards against which the evidence was measured[,] . . . [and] should be broad enough to cover all material issues.'" *OCI*, 479 F.3d at 1203–04 (quoting *Otero v. Mesa County Valley Sch. Dist.*, 568 F.2d 1312, 1316 [10th Cir. 1977]) (alteration in original). In the instant case, I find, as the jury did, that Defendant did not discriminate against Plaintiff based on his age. The following findings of fact and conclusions of law support my determination.

## 1.     *Findings of Fact*

1.      Plaintiff is male and was born in 1943. (Notice, Attach. 1 ¶ 1 [Proposed Order]; *admitted at* Pl.'s Obj at 1.)

2.      Plaintiff began working for Defendant in 1978. (Order at 2.)

3.      Plaintiff retired from Defendant on October 30, 2004. (2/20/07 Tr. at 4 [Pl. Test.].)

4.      In 1991, Plaintiff became a human resources specialist for Defendant.  (*Id.* at 14
        [Pl. Test.].)  He performed his job very well.  (2/22/07 Tr. at 70 [Quartemont
        Test.], 98 [Beegle Test.].)

5.      In November 2001, Defendant issued a vacancy announcement for a team leader
        position.  (2/20/07 Tr. at 34 [Pl. Test.].)

6.      Linda Wamboldt, Anita Rakestraw, and Plaintiff applied for the position.  (2/22/07
        Tr. at 23 [Quartemont Test.].)

7.      Defendant selected Ms. Wamboldt to fill the team leader position.  (Notice,
        Attach. 1 ¶ 5 [Proposed Order]; *admitted at* Pl.'s Obj. at 1.)

8.      Defendant later filled a second team leader position from the same vacancy
        announcement and selected Ms. Rakestraw.  (*Id.*, Attach. 1 ¶ 6 [Proposed Order];
        *admitted at* Pl.'s Obj. at 1.)

9.      Plaintiff was fifty-eight years old at the time he applied for the team leader
        position.  (*Id.*, Attach. 1 ¶ 4 [Proposed Order]; *admitted at* Pl.'s Obj at 1.)  Mses.
        Wamboldt and Rakestraw were in their early forties at the time they applied.  (*Id.*,
        Attach 1 ¶¶ 5–6 [Proposed Order]; *admitted at* Pl.'s Obj. at 1.)

10.     Interviews of the team leader applicants were conducted by Shirley Purcell, Tedd
        Beegle, and Randall Quartemont.  (*Id.*, Attach. 1 ¶ 7 [Proposed Order]; *admitted
        at* Pl.'s Obj. at 1.)

11.     Mr. Quartemont encouraged Plaintiff to apply for promotion to the position.
        (2/20/07 Tr. at 34–35 [Pl. Test.].)

12.   Ms. Purcell was born in 1949.  (Stipulation of Facts No. 14 [filed Feb. 9, 2007].)

13.   Mr. Beegle was born in 1944.  (*Id.*, No. 16.)

14.   Mr. Quartemont was born in 1946.  (*Id.*, No. 17.)

15.   Ms. Purcell and Messrs. Beegle and Quartemont were over fifty years of age at the
time of the selections at issue.  (*Id.*, Nos. 14, 16–17.)

16.   Ms. Purcell was the selecting official.  (Notice, Attach. 1 ¶ 18 [Proposed Order];
*admitted at* Pl.'s Obj. at 1.)

17.   After the interview process, Messers. Quartemont and Beegle recommended Ms.
Wamboldt for the first team leader position.  (2/23/07 Tr. at 25 [Quartemont
Test.], 93–94 [Beegle Test.].)

18.   Messers. Quartemont and Beegle recommended Ms. Rakestraw for the second
team leader position.  (2/23/07 Tr. at 26 [Quartemont Test.], 93–94 [Beegle
Test.].)

19.   Messrs. Beegle and Quartemont independently made up their minds in deciding
which candidates to recommend for team leader.  (2/20/07 Tr. at 115–16 [Pl.
Test.].)

20.   All applicants met the basic qualifications for the position.  (2/21/07 Tr. at 116
[Purcell Test.].).

21.   Plaintiff had significantly more experience in human resources than Mses.
Rakestraw and Wamboldt.  (*Id.* at 119  [Purcell Test.].)

22.    Plaintiff had received numerous awards during his tenure with Defendant, many of which Ms. Purcell and Messers. Quartemont and Beegle signed off on, for his performance as a human resources specialist, fine mentorship and training of others, and ability to handle complex and sensitive employee relations cases. (*Id.* at 123, 197–200 [Purcell Test.]; 2/22/07 Tr. at 51–64 [Quartemont Test.], 98–100 [Beegle Test.].) In fact, Plaintiff was awarded the highest possible award within Defendant's agency. (2/21/07 Tr. at 123 [Purcell Test.].)

23.    Of the applicants, only Plaintiff and Ms. Wamboldt had a Master's Degree. (*Id.* at 118, 120 [Purcell Test.].)

24.    Of the applicants, only Mses. Wamboldt and Rakestraw had a senior professional human resources certification, signifying their passage of a difficult test regarding human resources. (*Id.* at 165–66 [Purcell Test.]; 2/22/07 Tr. at 18 [Quartemont Test.].)

25.    Ms. Purcell took notes during the candidate interviews regarding her perception of each candidate's willingness to implement new initiatives that she anticipated the department would be undergoing in the near future. (2/21/07 Tr. at 169–72 [Purcell Test.].) Ms. Purcell noted Ms. Wamboldt's willingness to take a "cheerleader role" in implementing change. (*Id.* at 169–70 [Purcell Test.].) Ms. Purcell noted that Ms. Rakestraw "said change is good, she gets excited about it, it adds value, she likes it." (*Id.* at 170–71 [Purcell Test.].) Ms. Purcell noted that Plaintiff said "if required by management," he would implement the change,

because "it doesn't do any good to kick against a brick wall." (*Id.* at 172 [Purcell Test.].)

26.    Messers. Quartemont and Beegle, both of whom had directly supervised Plaintiff, felt he had demonstrated an aversion to change. (2/22/07 Tr. at 16 [Quartemont Test.], 87 [Beegle Test.].)

27.    Writing and public speaking were two important aspects of the team leader job. (*Id.* at 78–79 [Beegle Test.].)

28.    Ms. Purcell and Messers. Quartemont and Beegle testified that Plaintiff's writing skills were not as strong as those of Mses. Wamboldt and Rakestraw; Ms. Purcell and Mr. Quartemont testified the same was true of Plaintiff's public speaking skills.[2] (2/21/07 Tr. at 147–50 [Purcell Test.]; 2/22/07 Tr. at 11–13, 17–18 [Quartemont Test.], 80–81 [Beegle Test.].) The interviewers perceived that Plaintiff's writing was excessively wordy and required significant revision by his supervisors. (2/21/07 Tr. at 147 [Purcell Test.]; 2/22/07 Tr. at 11–12 [Quartemont Test.], 80–81 [Beegle Test.].) They also perceived that Plaintiff's presentation style was soft and monotone, and that Plaintiff generally read from note cards. (2/21/07 Tr. at 147–48 [Purcell Test.]; 2/22/07 Tr. at 70 [Quartemont Test.].)

---

[2]Mr. Beegle did not have the opportunity to observe Plaintiff give an oral presentation. (2/22/07 Tr. at 86 [Beegle Test.].)

29.     Mr. Quartemont, who evaluated Plaintiff's performance twice each year between
        1996 and 2001, never indicated that Plaintiff was deficient in his writing or
        presentation skills. (2/22/07 Tr. at 9, 50–64 [Quartemont Test.].)  Mr. Beegle
        signed these performance appraisals. (*Id.* at 101–02 [Beegle Test.].)  Mr.
        Quartemont did discuss Plaintiff's writing deficiencies with him and encouraged
        Plaintiff to project his voice when giving presentations. (*Id.* at 51–64 [Quartemont
        Test.].)

30.     Ms. Purcell and Messrs. Beegle and Quartemont each denied that Plaintiff's age
        was a motivating factor in the selections at issue. (Notice, Attach. 1 ¶ 10
        [Proposed Order]; *admitted at* Pl.'s Obj. at 1.)

31.     In the six months after Plaintiff's non-selection, Ms. Purcell was involved in seven
        other selections, and three times selected candidates over the age of fifty. (2/21/07
        Tr. at 181–82 [Purcell Test.].)

32.     Prior to the selection at issue, Ms. Purcell never did anything to Plaintiff that
        indicated she might have been discriminating against him. (2/20/07 Tr. at 63–64
        [Pl. Test.].)

33.     Prior to the selection at issue, Plaintiff never told his wife that he was being treated
        differently at work because of his age or that younger people were receiving
        special benefits or preferences as a general matter at his work. (2/21/07 Tr. at
        227–29 [Ms. Layman Test.].)

34.     Although Plaintiff was eligible for retirement beginning in 1988, he never felt Ms.

        Purcell, Mr. Beegle, or Mr. Quartemont encouraged him to retire.  (2/20/07 Tr. at

        119–20  [Pl. Test.].)

35.     Plaintiff can point to no examples of age-based remarks at any point in time made

        by Ms. Purcell, Mr. Beegle, or Mr. Quartemont.  (*Id.* at 124 [Pl. Test.].)

36.     The jury indicated on its jury verdict form that Plaintiff did not prove that

        Defendant intentionally discriminated against him on the basis of his age when it

        failed to select him as team leader.  (Verdict ¶ 4.)

*2.      Conclusions of Law*

        The ADEA prohibits Defendant from discriminating against Plaintiff on the basis of his

age.  29 U.S.C.S. § 623 (LexisNexis 2007).  When, as here, a plaintiff cannot present direct

evidence of discrimination, this circuit applies the framework of shifting evidentiary burdens

outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Bolton v. Spring/United Mgmt. Co.*, 220 F. App'x 761, 766 (10th Cir. 2007).  As a threshold

matter under *McDonnell Douglas*, Plaintiff must establish a *prima facie* case of discrimination.

*McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).

        The burden of establishing a *prima facie* case is "not onerous."  *Id.*  Plaintiff must show

that: (1) he was a member of a protected age group; (2) he applied and was qualified for the

position; (3) despite being qualified he was rejected; and (4) the position was filled by a younger

person.  *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1542 (10th Cir. 1987); *accord Sloan v.*

*Boeing Co.*, No. 95–3354, 1997 U.S. App. LEXIS 429, at *10–11 (10th Cir. Jan. 10, 1997).

-10-

Importantly, in this case, "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he lost out *because of his age.*" *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (emphasis in original). Nonetheless, an inference of age discrimination cannot be drawn from the promotion of a worker who is "insignificantly younger" than the passed-over worker. *Id.* at 313–14.

"Establishment of a *prima facie* case creates a presumption of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If Plaintiff establishes a *prima facie* case, the burden of production then shifts to Defendant to "articulate a legitimate, nondiscriminatory reason" for its adverse action. *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 792). If Defendant articulates a proper basis for its actions, the burden shifts back to Plaintiff to demonstrate that the reason advanced by Defendant is a pretext for discrimination. *Burdine*, 450 U.S. at 255–56.

Plaintiff must also show causation. "[P]laintiff's age must have actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (internal quotations omitted; alteration in original); *accord Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1252 (10th Cir. 1992).

Here, Plaintiff easily establishes a *prima facie* case: (1) Plaintiff was over forty years old at the time he applied for a promotion to team leader, (2) he applied and was qualified for the open positions; (3) despite being qualified, Plaintiff was passed over; and (4) the positions were filled by individuals whom, for the purposes of this order, I will presume were not insignificantly

younger.[3] *See Furr*, 824 F.2d at 1542. Defendant, in turn, has articulated a legitimate, nondiscriminatory reason for its failure to promote — namely, that Plaintiff was the lesser of the candidates because he was resistant to change, lacked strong writing and public speaking skills, and did not have a senior professional human resources certification.

I find Plaintiff has failed to show Defendant's proffered reasons for failing to promote him were pretextual. "An employee may demonstrate pretext by showing the employer's proffered reason [for its action] was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). This court's inquiry is not whether Defendant's reasons for failing to promote were "wise, fair or correct, " but whether Defendant "honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (citation and internal quotation marks omitted); *see also Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (noting the court's "role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments"). Accordingly, "[i]t is the perception of the decision maker [that] is relevant, not plaintiff's perception of [himself]." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (citation omitted).

I find Mses. Wamboldt and Rakestraw had "rational basis advantages over [Plaintiff] as candidates for promotion." *Jones*, 349 F.3d at 1268. Although Plaintiff had significantly more

---

[3]Defendant does not argue the age differences between Plaintiff and Mses. Wamboldt and Rakestraw is insignificant. Moreover, the Tenth Circuit has held that even an age difference of five years — less than the age differences at issue in the instant case — is not *per se* insignificant. *Whittington v. Nordan Group, Inc.*, 429 F.3d 986, 995 (10th Cir. 2005).

experience in human resources than the other candidates, the three interviewers each testified that Plaintiff lacked the level of writing and presentation skills — important skills for the team leader position — that the other two candidates possessed.  Plaintiff also lacked the senior professional human resources certification held by the other two candidates.  Perhaps most importantly, according to each of the interviewers, Plaintiff had shown himself throughout his tenure to be resistant to change.  The decisionmakers could reasonably have viewed this characteristic as an impediment to Plaintiff being a successful team leader during a time that the department was undergoing great change.  I find it was rational for the interviewers to decide that these deficiencies were significant enough to outweigh Plaintiff's longer human resources experience. That Plaintiff received awards commending his performance as a human resources specialist does not reveal these criticisms to be pretextual.  Undisputed testimony showed that, in spite of these awards, Plaintiff received criticism of his writing on several occasions and was asked to improve his presentation skills.  Put simply, "this is not a case in which the facts assure us that [P]laintiff was better qualified than the other candidates for the position, such that we might be willing to infer pretext from [his] non-selection." *Carter v. Mineta*, 125 F. App'x 231, 236–37 (10th Cir. 2005) (internal quotations omitted).

Moreover, even if Defendant made a poor decision in choosing Mses. Wamboldt and Rakestraw over Plaintiff as team leaders, Plaintiff presented no persuasive evidence suggesting that his *age* was a motivating factor in the decision not to promote him.  *Reeves*, 530 U.S. at 141. Other than his non-selection for the team leader position, Plaintiff furnished no evidence of age-based bias.  Prior to that time, Plaintiff could point to no examples of  discriminatory conduct by

any of his supervisors.  *See Green v. New Mexico*, 420 F.3d 1189, 1195–96 (10th Cir. 2005) (finding absence of past discriminatory conduct by decisionmaker militated against a finding of intentional discrimination).  Moreover, Plaintiff's interviewers, all of whom independently found him to be the least desirable candidate for similar reasons, were — like Plaintiff — in their fifties, ranging from one to six years younger than him.  *See id.* (finding decisionmaker's membership in the protected group at issue militated against a finding of intentional discrimination). Accordingly, I find Plaintiff failed to carry his burden of showing that Defendant intentionally discriminated against him based on age.

*3.*      *Conclusions*

Based on the foregoing it is therefore ORDERED as follows:

1.      PLAINTIFF's objection (#99) is OVERRULED.

2.      Upon the findings of fact and conclusions of law stated herein, the clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff on the ADEA claim, dismissing the claim with prejudice.

3.      The clerk shall forthwith prepare a final judgment reflecting the court's and jury's disposition of all claims in this case.

Dated this 20th day of November, 2007.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge